## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## DELTA DIVISION

BRANDON ARCHIBALD                                          PLAINTIFF

v.                              CASE NO. 2:22-CV-00074-BSM

THOMAS BRACEY, *et al.*                                    DEFENDANTS

## ORDER

Defendants' motion for summary judgment [Doc. No. 18 ] is granted, and Brandon Archibald's federal and state constitutional and statutory claims are dismissed with prejudice. Archibald's state tort claims are dismissed without prejudice for lack of jurisdiction.

## I. BACKGROUND

While driving on I-55 in Mississippi, Archibald was passed at a high rate of speed by an unmarked black sport utility vehicle (SUV). Compl. ¶ 2, Doc. No. 1; Deposition of Brandon Archibald, at 11-12, Doc. No. 20-1. Believing the occupants of the SUV were Southaven, Mississippi police officers, Archibald trailed them. Archibald Dep. at 12-14. After exiting the freeway, the SUV pulled next to Archibald, who was filming, and a uniformed passenger rolled down his window. Archibald asked for the names and badge numbers of the occupants of the SUV, but the officers drove away without responding. *Id.* at 14-15; Southaven Video, Doc. No. 20-2. Archibald reviewed his video recording and realized that the officers in the SUV were not Southaven police officers, but were West Memphis, Arkansas police officers. Archibald Dep. at 15-17.

A few days later, Archibald and his brother went to the West Memphis Police

Department.  Compl. ¶ 9; Archibald Dep. at 18-19.  Archibald pushed the button on the police department's door for service, and was advised that the supervisor was on his way. Archibald Dep. at 19.  Archibald was not permitted to enter the building but a few minutes later, Sergeant Thomas Bracey came out to meet with Archibald while Archibald's brother filmed the meeting.  *Id.*  Archibald asked for Bracey's name and badge number, and both were provided.  *Id.* at 20-21.  Archibald showed Bracey the video of his encounter with the black SUV.  *Id.* at 24-25; Video of Conversation with Sergeant Bracey, Doc. No. 20-4. Soon-thereafter, Captain Jimbo Presley came out of the police department and identified himself as the person in the SUV.  Archibald Dep. at 26; Video of Brandon Archibald Arrest, Doc. No. 20-5.  Presley told Archibald that "[we] ain't dealing with that" and walked back into the police department.  Presley told Bracey to come back into the department with him. Archibald Arrest Video.

When Bracey entered the door of the police department, Archibald stopped the door from closing.  Deposition of Thomas Bracey, at 36 & 41, Doc. No. 20-3; Archibald Arrest Video.  Archibald asked Presley for his name and badge number, and Presley complied. Archibald Arrest Video.  Archibald then said that he wanted to file a police report, and Presley told him to file one with the Southaven Police Department.  *Id.*  Bracey then told Archibald several times to remove his foot from the door so that it could close or he would be arrested for trespassing.  *Id.*  Archibald failed to comply and was therefore arrested for trespassing.  *Id.*  Bracey initially charged Archibald with trespassing but changed the charge to disorderly conduct.  Bracey Dep. at 34-35.

After pleading not guilty to disorderly conduct, Archibald was called by Michael Stephenson, West Memphis's city attorney, and informed that West Memphis's Chief of Police, Michael Pope, had been the passenger in the SUV.  Archibald Dep. at 39-40. Stephenson told Archibald that he would dismiss the case against Archibald if he would sign a release.  *Id.* at 40.  Although Archibald refused to sign a release, Stephenson dismissed the charges.  *Id.*

Archibald is suing Bracey and Presley in their individual and official capacities, and the city of West Memphis, Arkansas for: (1)  violating the First and Fourth Amendments to the United States Constitution, Article 22 of the Arkansas Constitution, and Ark. Code Ann. section 21-1-106; (2) municipal liability under 42 U.S.C. section 1983; and (3) malicious prosecution, abuse of process, and false imprisonment.  Compl. ¶¶ 20-31.  Defendants are moving to dismiss, or alternatively, for summary judgment.  Defs.' Mot. Summ. J., Doc. No. 18.

## II. LEGAL STANDARD

Defendants' motion to dismiss is treated as a motion for summary judgment because the parties rely on exhibits outside the complaint.  *See Abramson v. Mitchell*, 459 F.2d 955, 957 (8th Cir. 1972).  Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings.  *Holden v. Hirner*,

3

663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in the light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007).

### III. DISCUSSION

Summary judgment is granted on all of Archibald's federal and state constitutional claims, and on all federal and state statutory claims, because defendants are entitled to judgment as a matter of law. Archibald's state tort claims are dismissed for lack of jurisdiction.

A.    <u>Individual Capacity Claims</u>

Summary judgment is granted on Archibald's individual capacity claims.

### 1. First Amendment Claim

Summary judgment is granted on Archibald's First Amendment claim because it is arguable that the officers had probable cause to charge him with trespassing and disorderly conduct. To prove his claim, Archibald must prove that (1) he engaged in a protected activity, (2) Defendants took adverse action against him that would chill a person of ordinary firmness from engaging in the activity, (3) the adverse action was motivated by Archibald's exercise of the protected activity, and (4) the officers lacked probable cause or arguable probable cause. *See Just v. City of St. Louis, Mo.*, 7 F.4th 761, 768 (8th Cir. 2021). The only element in dispute is whether the officers had arguable probable cause to charge Armstrong. Arguable probable cause is a low standard because it "is a mistaken but

4

objectively reasonable belief the suspect committed a criminal offense." *Dowell v. Lincoln Cnty., Mo.*, 762 F.3d 770, 777 (8th Cir. 2014). Defendants met this standard because criminal trespass is simply unlawfully remaining on another person's property, Ark. Code Ann. section 5-39-203, and disorderly conduct is engaging in "tumultuous" behavior while intending to cause "public inconvenience, annoyance, or alarm," Ark. Code Ann. section 5-71-207.

It was reasonable for the officers to believe that Archibald was trespassing when he repeatedly failed to comply with their request that he remove his foot from the doorway to the police department so that the officers could secure the door. This is true even if the officers were mistaken. *See Reform Am. v. City of Detroit, Mich.* 37 F.4th 1138, 1155 (6th Cir. 2022) ("[T]he real question is simply whether officers' belief that [the plaintiff] was committing trespass was reasonable under the circumstances, even if it happens to one day be proven technically mistaken.") (citing *Heien v. North Carolina*, 574 U.S. 54, 60-62 (2014)). Moreover, it was also reasonable for the officers to believe that Archibald was engaging in disorderly conduct when he failed to comply with their request that he stop physically obstructing the doorway to the police department so they could secure the door.

### 2. Fourth Amendment Claim

The officers are immune from Archibald's Fourth Amendment claim because they did not deprive him of a clearly established right when they charged him with a misdemeanor violation. *See Pollreis v. Marzolf*, 66 F.4th 726, 729-30 (8th Cir. 2023). Archibald's Fourth Amendment right to be free from illegal search and seizure was not violated because the

5

officers had arguable probable cause to arrest him for trespassing and disorderly conduct. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *Brown v. City of St. Louis, Mo.*, 40 F.4th 895, 901 (8th Cir. 2022).

### 3. Article 22 Claim

Archibald's claim under Article 22 of the Arkansas Constitution is dismissed because there is no Article 22 of the Arkansas Constitution.

### 4. Ark. Code Ann. Section 21-1-106 Claim

Archibald argues that a reasonable fact-finder could determine that he was arrested for videotaping his interactions with the police in violation of Ark Code. Ann. section 21-1-106, which guarantees the right to record in public places. Pl's Br. Supp. Resp. Mot. Summ. J. 7, Doc. No. 27. Summary judgment is granted because the video evidence clearly shows that Archibald was arrested for impeding the doorway, and not for videotaping the officers.

B.     Claims Against the City

Summary judgment is granted on Archibald's claims against the City of West Memphis and his official capacity claims against the officers.

### 1. Claims against the City of West Memphis

Summary judgment is granted on Archibald's claims against the City because he has failed to show that his rights were violated as a result of a "policy or custom" of the City. *Calgaro v. St. Louis Cnty.*, 919 F.3d 1054, 1058 (8th Cir. 2019). This is true because the officers have been absolved of liability. *Sinclair v. City of Des Moines, Iowa*, 268 F.3d 594, 596 (8th Cir. 2001) (per curiam). Consequently, there is no municipal liability. *Id.*

*2. Official Capacity Claims*

Summary judgment is granted on Archibald's claims against the officers in their official capacities because these claims are in all respects claims against the City, which are examined identically to those referenced in the previous section.  *Banks v. Slay*, 875 F.3d 876, 878 (8th Cir. 2017).

C.      State Tort Claims

Archibald's remaining state tort claims are dismissed without prejudice because the balance of factors to be considered in whether to exercise supplemental jurisdiction–judicial economy, convenience, fairness, and comity–points towards declining to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

## IV. CONCLUSION

For these reasons, summary judgment is granted on all of Archibald's federal and state constitutional and statutory claims, and those claims are dismissed with prejudice.  His state tort claims are dismissed without prejudice for lack of jurisdiction.

IT IS SO ORDERED this 30th day of August, 2023.

UNITED STATES DISTRICT JUDGE